# IN THE COURT OF APPEALS OF IOWA

No. 21-1279
Filed October 19, 2022

**IN THE MATTER OF THE ESTATE OF CYRIL J. GANSEN, Deceased.**

**THOMAS J. GANSEN,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi Ackley, Judge.

Thomas Gansen appeals the district court order overruling his objections to the final report of the estate of Cyril Gansen. **AFFIRMED.**

Peter Glenn Gierut of Gallagher, Millage & Gallagher, P.L.C., Bettendorf, and Brian Kane of Kane, Norby & Reddick, P.C., Dubuque, for appellant.

Robert E. Sabers and Douglas C. Pearce, Dubuque, for appellee.

Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**GREER, Judge.**

After Cyril Gansen died testate on March 3, 2018, one of his six children, Thomas Gansen, objected to the final report, arguing that the co-executors, his siblings Michael Gansen and Judy Callahan, handled several aspects of the estate inappropriately. Although the co-executors were given broad powers under the will, Thomas asserted self-dealing by Michael, citing discrepancies in the probate inventory and other breaches of fiduciary duty by the co-executors that left him with a smaller share of the estate than he believed he was entitled. After a hearing, the district court made some minor changes to the final report but not to Thomas's satisfaction, so he appeals. We affirm the district court's ruling.

In addition to some specific bequests not at issue here, Cyril's will directed the residue of his estate to be given in equal shares per stirpes to all of his children. The district court admitted Cyril's will to probate soon after his death and appointed Michael and Judy as co-executors without bond, as the will required.

In February 2021, the co-executors filed the final report. Thomas objected on numerous grounds, alleging Michael engaged in self-dealing and that they omitted or undervalued several pieces of estate property. The matter proceeded to a brief hearing, during which Thomas testified. But, before finishing the record, the parties agreed to submit additional evidence via exhibits in lieu of additional testimony or hearing time. In August, the district court issued an order overruling most of Thomas's objections and approving the final report with amendments not at issue here. Thomas appeals.

Because a hearing on objections to a fiduciary's final report is an equitable proceeding, our review is de novo. *See In re Estate of Johnson*, 387 N.W.2d 329,

332 (Iowa 1986); *see also* Iowa Code § 633.33 (2018) (stating all matters in probate, other than actions to set aside or contest wills, are tried in equity); Iowa R. App. P. 6.907 ("Review in equity cases shall be de novo."). "Although we give deference to the district court's findings of fact, we are not bound by them." *Johnson*, 387 N.W.2d at 332.

Executors of an estate must file a final report that identifies and values the decedent's real and personal property. Iowa Code § 633.477. An executor "shall [not] in any manner engage in self-dealing, except on order of court after notice to all interested persons, and shall derive no profit other than the fiduciary's distributive share in the estate from the sale or liquidation of any property belonging to the estate." *Id.* § 633.155. Self-dealing is a transaction "wherein a trustee, acting for himself and also as 'trustee,' a relation which demands strict fidelity to others, seeks to consummate a deal where in self-interest is opposed to duty." *In re Est. of Snapp*, 502 N.W.2d 29, 33 (Iowa 1993) (citation omitted); *see also Self-dealing*, *Black's Law Dictionary* (11th ed. 2019) (defining "self-dealing" as "[p]articipation in a transaction that benefits oneself instead of another who is owed a fiduciary duty"). Furthermore,

> Every fiduciary shall be liable and chargeable in the fiduciary's accounts for neglect or unreasonable delay in collecting the credits or other assets of the estate or in selling, mortgaging or leasing the property of the estate; for neglect in paying over money or delivering property of the estate the fiduciary shall have in the fiduciary's hands; for failure to account for or to close the estate within the time provided by this probate code; for any loss to the estate arising from the fiduciary's embezzlement or commingling of the assets of the estate with other property; for loss to the estate through self-dealing; for any loss to the estate arising from wrongful acts or omissions of any cofiduciaries which the fiduciary could have prevented by the exercise of ordinary care; and for any other negligent or willful act or

nonfeasance in the fiduciary's administration of the estate by which loss to the estate arises.

Iowa Code § 633.160.

The executors generally have "the burden of proof to sustain all matters raised in the [f]inal [r]eport." *In re Est. of Bruene*, 350 N.W.2d 209, 214 (Iowa Ct. App. 1984). However, "objectors have the burden of sustaining their affirmative allegations." *In re Carson's Will*, 289 N.W.2d 30, 37 (Iowa 1939). Also, "[t]he burden to show wrongful conduct which suffices to surcharge a fiduciary is upon those so asserting." *In re Est. of Wiese*, 257 N.W.2d 1, 7 (Iowa 1977).

Some of Thomas's self-dealing concerns on appeal focus on the handling of the sale of Cyril's home by the co-executors. Yet, as the district court noted, the will delegated to them unfettered authority to "sell any real . . . property . . . 'as my executor sees fit'" and "to maintain, repair, alter, improve or remove any improvements on real estate." And even though Thomas argues he successfully bid on the home and his siblings "moved the goal posts"[1] so he could not buy the property, he, along with the other siblings, filed a consent to Michael's purchase of the property for the appraised value with the court. The district court approved the sale on September 19, 2018, pursuant to the purchase contract signed by Michael and his wife, which gave Michael possession on September 1. *See* Iowa Code § 633.477 (allowing an executor to purchase estate property "on order of court

[1] Thomas claimed that after accepting his bid for the home for the appraised value of $248,000, the executors added a condition that the sibling who purchases the home must then live in the home. Because Thomas did not plan to live in the home and Michael did, the siblings all agreed to sell it to Michael instead. Michael paid the same amount Thomas offered, so Thomas cannot show Michael's purchase of the home resulted in loss to the estate. *See* Iowa Code § 633.160 (stating an executor is liable "for loss to the estate through self-dealing").

after notice to all interested persons"). Even more, the move to block Michael's purchase of the home was not part of the objections Thomas made to the final report, which Thomas's attorney confirmed during the hearing. So, he may not raise the issue over the sale of the home here. *See Abodeely v. Cavras*, 221 N.W.2d 494, 500 (Iowa 1974).

There are other concerns involving the home that are properly before us for consideration. Thomas asserts the house was sold "as is" and estate monies should not have been used to repair it for Michael. But the co-executors detailed the repairs and how those would have been a seller's responsibility under a standard non-family sale. We are persuaded by their arguments and find nothing inappropriate about the home repairs that the co-executors authorized. Another issue involves the failure of Michael to pay rent while he lived in the home before he purchased it. Thomas contends Michael engaged in improper self-dealing by living in the home for five months before he purchased it. The co-executors acknowledge Michael lived in the home without paying rent, but they reason that Michael lived in the home to maintain it and to protect it from burglars and vandals. As an additional consideration, while he lived there, Michael also performed significant work to prepare the home for sale at no cost to the estate. In particular, Michael demolished an old, dilapidated building on the property as required by the county before title could be transferred. Michael essentially provided his services in lieu of rent, and his actions generated substantial savings for the estate far outweighing any loss of rent. *See id.*

Finally, Thomas points to the probate inventory and contends the co-executors—through neglect or self-dealing—omitted or substantially understated

the value of several pieces of Cyril's personal property in the final report. The district court found because Thomas had not been on the farm property since 2014, he lacked familiarity with Cyril's actions and property at the time of his death. And Thomas admitted a falling out with his father years prior. Because Thomas had not been on the property for some time, much of the property that was allegedly not accounted for were items the co-executors described as tractors already sold before their father's death or property not in the same good condition as Thomas remembered it. The district court also found the co-executors' version more credible when they described valuing the property listed in the final report by selling it at auction or other arm's length transactions, Cyril selling other property before his death, and assigning no value to the rest of Cyril's property. We place weight on the district court finding the co-executors more credible than Thomas in identifying and valuing the estate's property. *See Johnson*, 387 N.W.2d at 332. On our de novo review of the record, other than the changes the district court made to resolve minor issues over the final report, we agree Thomas failed to support his objections with evidence that would require modifications to the final report, including his claims Michael engaged in improper self-dealing. We affirm the district court's order approving the final report.

**AFFIRMED.**